# EXHIBIT A

Christopher J. McGinn, Esq.
The Law Office of Christopher J. McGinn
P.O. Box 365
79 Paterson St.
New Brunswick, NJ 08901-0365
(732) 937-9400 - ph
(800) 931-2408 - fax

Glen H. Chulsky, Esq.
Law Offices of Glen H. Chulsky
410 Route 10 West, Suite 210
Ledgewood, NJ 07852
(973) 252-9000 - ph
(973) 252-9100 - fax

Attorneys for the Plaintiff



FILED

OCT 11 2007

MONMOUTH VICINAGE
CIVIL DIVISION          103

---

Terry-Ann Mertz,

        Plaintiff,

           vs.

National Enterprise Systems, Inc. d/b/a
National Enterprise Systems

        Defendant.

---

SUPERIOR COURT OF NEW JERSEY
MONMOUTH COUNTY - LAW DIVISION

Civil Action   L 4895-07

Docket No.: .

COMPLAINT WITH JURY DEMAND

## STATEMENT OF THE CASE

1.    In June of 2007, a representative of National Enterprise Systems, Inc. (hereinafter, NESI) called Plaintiff Terry-Ann Mertz at her office and threatened to have her immediately arrested by law enforcement officers and prosecuted for "fraud" unless she agreed to provide NESI with instant direct access to her bank account to remove more than $5,000 to pay off an alleged consumer debt. Ms. Mertz believed those threats and, shaking and sobbing at her desk, she agreed to whatever would satisfy the NESI representative so that she would not be removed from her office in handcuffs. This call traumatized Ms. Mertz and has caused her to suffer panic attacks, anxiety, insomnia, nightmares, and other health problems that continue to this day.

2.    Another representative of NESI told Ms. Mertz's immediate supervisor at her office that NESI was about to garnish Ms. Mertz's wages to pay for an alleged debt. This statement was false, misleading, and constituted harassment and an invasion of Ms. Mertz's privacy. This same representative also told Ms. Mertz that she had missed a "court arbitration" while she

was in the hospital. This too was false, misleading and intended to harass.

3.    Plaintiff brings this action for damages caused by NESI's egregious violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), a federal statute expressly designed to prohibit debt collectors from engaging in such abusive, deceptive, and unfair practices.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this matter alleging violations of the FDCPA, 15 U.S.C. 1692 et seq. pursuant to 15 U.S.C. 1692k(d).

5.    Venue is proper in Monmouth County as that county is the location of Plaintiff's residence..

## ALLEGATIONS OF FACT

6.    Plaintiff Terry-Ann Mertz resides in Neptune, Monmouth County, New Jersey.

7.    Defendant National Enterprise Systems, Inc. ("NESI) is a foreign corporation with a main business address in Solon, Ohio.

8.    At all times relevant, the principal business engaged in by NESI was the collection of debts.

9.    At all times relevant, the principal business engaged in by NESI was the collection of consumer debts.

10.   At all times relevant, the principal business engaged in by NESI was the collection of debts, which debts were incurred primarily for personal, family or household purposes.

11.   At all times relevant, NESI regularly collected or attempted to collect debts owed or due or asserted to be owed or due another.

12.   At all times relevant, NESI regularly collected or attempted to collect consumer debts owed or due or asserted to be owed or due another.

13.   At all times relevant, NESI regularly collected or attempted to collect debts owed or due or asserted to be owed or due another, which debts were incurred primarily for personal, family or household purposes.

14.   At all times relevant, NESI used the mail or other instruments of interstate commerce in its attempts to collect consumer debts owed or due or asserted to be owed or due another.

15.   At all times relevant, NESI used the mail or other instruments of interstate commerce in its attempts to collect debts owed or due or asserted to be owed or due another, which debts were incurred primarily for personal, family or household purposes.

16.   NESI is a "debt collector" within the scope of the definition contained in 15 U.S.C. 1692 a(6) and interpretations thereof.

17.  NESI initiated collection efforts against Plaintiff for an alleged debt.

18.  The alleged debt at issue arose out of a transaction that was primarily for Plaintiff's personal, family or household purposes.

19.  Plaintiff is a consumer in connection to the alleged debt for which NESI is attempting to collect.

20.  In April of 2007, Ms. Mertz was hospitalized for a major medical operation.  When she left the hospital she spent time living with her father as she convalesced.  She also spent time at her apartment.

21.  While Ms. Mertz was away from work due to her medical condition, a representative from NESI who identified herself as Audrey Rice left a message on Ms. Mertz's work voicemail stating that NESI needed to speak to Ms. Mertz about "a matter of importance".

22.  On or about April 26, 2007, Ms. Mertz's supervisor, Terry Kurtz, listened to that voicemail message from Ms. Rice and returned the call to her.  Ms. Rice revealed to Ms. Kurtz details about the debt and told Ms. Kurtz that NESI was about to "garnish" Ms. Mertz's wages.

23.  At the time Ms. Rice told Ms. Kurtz that Ms. Mertz's wages were to be garnished, neither NESI nor the creditor of the alleged debt had filed a complaint or obtained any kind of judgment against Ms. Mertz.

24.  The statement by Ms. Rice that NESI was about to garnish Ms. Mertz's wages was false.

25.  When Ms. Rice told Ms. Kurtz that NESI was about to garnish Ms. Mertz's wages, Ms. Rice knew that representation was false.

26.  Ms. Kurtz called Ms. Mertz at home and told her that a debt collector was about to garnish her wages.

27.  Ms. Mertz was greatly embarrassed the fact that her supervisor had been told details of an alleged debt and that there was a planned garnishment of her wages.

28.  Ms. Rice's statements to Ms. Mertz' supervisor have tarnished the supervisor's opinion of Ms. Mertz which will detrimentally effect her employment reviews, work assignments, and/or opportunities for advancement.

29.  Hearing from Ms. Kurtz that a debt collector was about to garnish her wages also upset Ms. Mertz because of the impact this would have on her finances as she had many expenses related to her illness and recovery.

30.  On or about April 27, 2007, Ms. Mertz returned a call of NESI and spoke with Audrey Rice. Audrey Rice told Ms. Mertz that there was a "court arbitration" on March 23, 2007 to which Ms. Mertz had not attended.

31.  Ms. Mertz told Ms. Rice that she had not received notice of any such arbitration and that she had been in the hospital during that time. The idea that she missed a "court arbitration" was very upsetting to Ms. Mertz who believed that this may have been the reason why her wages were to be garnished.

32.  At the time Ms. Rice told Ms. Mertz that she had missed a "court arbitration", no action had been filed related to the alleged debt. Further, at that time, no "court" action had been initiated by NESI, the creditor, or any other party related to the alleged debt.

33.  Ms. Mertz had not missed any "court arbitration".

34.  The statement that Ms. Mertz had missed a "court arbitration" was false.

35.  When Ms. Rice told Ms. Mertz that she had missed a scheduled "court arbitration", Ms. Rice knew that representation was false.

36.  Ms. Mertz told Ms. Rice that NESI should not have told her supervisor that NESI was going to garnish her wages.

37.  Ms. Rice told Ms. Mertz that she was "sorry" for having done that and that she would "send a letter" to Ms. Kurtz saying that NESI was referring to a person other than Terry Mertz. Ms. Mertz told Ms. Rice that she would prefer that Ms. Rice have no further communication with Ms. Kurtz.

38.  In early June of 2007, Ms. Mertz received a telephone call at her office from a person who identified himself as "Michael Waters of National Enterprise Systems".

39.  Mr. Walters told Ms. Mertz that "unless this matter is resolved today" he would have Ms. Mertz "arrested for fraud" and that she would be "put in jail".

40.  During the course of the call, Mr. Walters frequently yelled at Ms. Mertz and frequently repeated his threat of "arrest for fraud" and criminal legal action. He also called her a deadbeat and accused her of "fraudulent" actions.

41.  Mr. Walters demanded that Ms. Mertz provide immediate payment of $5,128.14 using her bank account number over the telephone. He told Ms. Mertz that he had to "report to the court office" within two hours that payment had been made or "legal action" would be taken.

42.  Mr. Walters insisted that Ms. Mertz immediately tell him if payment would be made or he would arrange for her immediate "arrest for fraud".

43.  Ms. Walters's tirade greatly upset Ms. Mertz who started shaking and sobbing at her desk.

44.  Mr. Walters caused Ms. Mertz to believe that law enforcement officers would remove her from her office in handcuffs if she would not satisfy Mr. Walters' demand for immediate payment.

45. Ms. Mertz told Mr. Walters that she would "do anything" not to go to jail over the alleged debt.

46. Ms. Mertz told Mr. Walters she would see about getting a loan on her pension to pay the alleged debt.

47. Mr. Walters insisted that Ms. Mertz find a blank check from her personal account and provide him with information from that check to guarantee payment.

48. Ms. Mertz told Mr. Walters that she only had a few hundred dollars or less in her bank account.

49. Mr. Walters told Ms. Mertz that a payment directly from her bank account could be post-dated until Ms. Mertz could arrange to get a loan from her pension.

50. When Ms. Mertz could not find a check fast enough, Mr. Walters yelled at her.

51. When Ms. Mertz located a blank check Mr. Walters insisted she take part on a three-way conference call with a person who would verify the conversation.

52. Mr. Walters arranged for Ms. Mertz to be part of a three-way call with himself and an unidentified person who listened as Ms. Mertz, under great duress, agreed that NESI could take $5,128.14 from her bank account via a posted check authorization for June 26, 2007.

53. Mr. Walters told Ms. Mertz that if the $5,128.14 was not available to be debited from her checking account on June 26, 2007 by NESI, he would take immediately initiate criminal legal action.

54. Ms. Mertz only agreed to have those funds taken from her account to avoid immediate criminal arrest. She had first made it clear to Mr. Walters that she did not have that amount in her bank account nor did she have access to that amount of money.

55. When the call ended, Ms. Mertz sat at her desk crying greatly upset at the fact that she had narrowly escaped jail and that if she could not raise more than $5,000 in less than two weeks, she would be facing arrest and prosecution.

56. On June 11, 2007 Ms. Mertz found three messages on her home answering machine from NESI representatives. Two messages were from a person who identified himself as "Tom Jones" and one message was from a person who identified himself as ""Bill Jones". That day Ms. Mertz received another call from NESI. The caller told her to hold "for an important message". Ms. Mertz held on the line but the call disconnected before anyone spoke to her.

57. That same day, June 11, 2007, Ms. Mertz returned the call of Tom Jones. She was put on hold and then the call disconnected. Shortly after the disconnection, Ms. Mertz was called by Mr. Water who said he was touching base.

58. On June 12, 2007 Mr. Walters left a message on Ms. Mertz's work voicemail saying he was touching base on her progress in securing the loan on her pension.

59. On June 13, 2007 Mr. Walters left a message on Ms. Mertz's home voicemail saying he was touching base.

60. After consulting with an attorney, Ms. Mertz took steps to deny NESI access to her bank account. She also sent NESI a letter insisting that it cease calling her.

61. The call with Mr. Walter traumatized Ms. Mertz. She was convinced that if she did not satisfy Mr. Walters' demand for immediate payment that law enforcement officers would enter her office, arrest her in front of her colleagues, and remove her in handcuffs. This possibility terrified Ms. Mertz.

62. The incident caused Ms. Mertz to feel guilty, as if she had committed a criminal act. She also suffered great stress at the daunting prospect of raising such a large sum of money in such a short period of time.

63. Subsequent to her call with Mr. Walters, Ms. Mertz has suffered a number of panic attacks that were caused by her memory of that call and her continued fear of criminal prosecution related to non-payment of the alleged debt.

64. The call with Mr. Walters has caused Ms. Mertz to suffer nightmares about being put in prison and loss of sleep.

65. The call with Mr. Walters has made Ms. Mertz anxious about answering a telephone.

66. Subsequent to her call with Mr. Walters, Ms. Mertz has suffered actual damages including but not limited to: loss of sleep, nightmares, headaches, anxiety, severe feelings of shame, irritability, postage, copying, out of pocket expenses, bank account closure expenses, and other damages as a direct result of the NESI's actions, conduct, omissions and violations of the FDCPA.

## FIRST COUNT
### (Fair Debt Collection Practices Act Violations)

67. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

68. This Court has jurisdiction over this matter alleging violations of the Fair Debt Collection Practices Act (hereinafter, FDCPA) 15 U.S.C. 1692 et seq. pursuant to 15 U.S.C. 1692k(d).

69. Defendant violated 15 U.S.C. 1692 et seq. of the FDCPA in its interactions with Plaintiff.

70. Defendant violated 15 U.S.C. 1692 et seq. of the FDCPA in connection with its collection attempts against Plaintiff.

71.   Defendant violated 15 U.S.C. 1692b of the FDCPA in connection with the telephone conversation with Plaintiff's supervisor at Plaintiff's place of employment.

72.   Defendant violated 15 U.S.C. 1692b(2) of the FDCPA by stating to Plaintiff's supervisor, that Plaintiff owed a debt.

73.   Defendant violated 15 U.S.C. 1692c(b) of the FDCPA by communicating with a person, in connection with collection of a debt, other than allowed by said section.

74.   Defendant violated 15 U.S.C. 1692c(b) of the FDCPA in connection with the telephone conversation with Plaintiff's supervisor at Plaintiff's place of employment.

75.   Defendant violated 15 U.S.C. 1692d of the FDCPA by engaging in conduct the natural consequence of was to harass Plaintiff.

76.   Defendant violated 15 U.S.C. 1692d of the FDCPA by engaging Plaintiff in telephone conversations repeatedly or continuously with the intent to annoy, abuse, or harass.

77.   Defendant violated 15 U.S.C. 1692d(6) of the FDCPA by failing to make a meaningful disclosure of its identity in its telephone call to Plaintiff's place of employment.

78.   Defendant violated 15 U.S.C. 1692e by using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

79.   Defendant violated 15 U.S.C. 1692e(2)(A) of the FDCPA by making false representations as to the character and/or legal status of the alleged debt.

80.   Defendant violated 15 U.S.C. 1692e(4) of the FDCPA by representing or implying that nonpayment of the alleged debt would result in the arrest or imprisonment of Plaintiff.

81.   Defendant violated 15 U.S.C. 1692e(5) of the FDCPA by threatening to take an action that cannot legally be taken.

82.   Defendant violated 15 U.S.C. 1692e(7) of the FDCPA by engaging in conduct in order to disgrace Plaintiff.

83.   Defendant violated 15 U.S.C. 1692e(10) by using any false representation or deceptive means to collect or attempt to collect the alleged debt from Plaintiff.

84.   Defendant violated 15 U.S.C. 1692e(11) of the FDCPA.

85.   Defendant violated 15 U.S.C. 1692f of the FDCPA by using unfair and unconscionable means to collect or attempt to collect the alleged debt from Plaintiff.

86.   Plaintiff has and will continue to suffer actual damages, including but not limited to, humiliation, embarrassment, severe feelings of shame, loss of sleep, nightmares, anxiety,

irritability, embarrassment, postage, copying, out of pocket expenses, bank account closure expenses, and other damages as a direct result of the Defendant's actions, conduct, omissions and violations of the FDCPA.

87. As a direct consequence of the conduct of NESI's employee(s), agent(s) and/or representative(s), Plaintiff has been experiencing severe feelings of shame, loss of sleep, nightmares, anxiety, irritability, embarrassment, postage, copying, out of pocket expenses, bank account closure expenses, and other damages which have impacted her life in a severe and negative way.

**SECOND COUNT**
**(Infliction of Emotional Distress**

88. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

89. Defendant's conduct in this matter was extreme and outrageous.

90. Defendant's conduct was intentional, intended to produce emotional distress.

91. Defendant's conduct was intentional in deliberate disregard of a high probability that emotional distress would follow.

92. Defendant's conduct was done with malice in deliberate disregard of a high probability that emotional distress would follow.

93. Defendant's conduct was reckless and/or wanton in deliberate disregard of a high probability that emotional distress would follow.

94. Defendant negligently caused Plaintiff to suffer emotional distress and other damages.

95. Plaintiff has and will continue to suffer severe emotional distress and other damages as a result of Defendant's conduct.

**THIRD COUNT**
**(Public Disclosure of Private Facts)**

96. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

97. Defendant invaded the privacy of Plaintiff.

98. Defendant caused the public exposure of Plaintiff's private affairs, which the public had no legitimate interest in learning and which was offensive to a reasonable person.

99. Defendant intentionally intruded upon Plaintiff's seclusion or private concerns, which was highly offensive to a reasonable person.

100. By such unauthorized and unwarranted publication and circulation of Plaintiff's name and personal information, Defendant's invaded her right of privacy, subjected her to ridicule and contempt, injured her personal esteem, reflected disgracefully on her character, diminished her standing, reputation and good name among friends and business associates, destroyed her peace of mind and caused her severe mental and emotional distress.

101. Defendant is liable to Plaintiff for the harm caused, including harm to her interest in privacy, mental anguish, severe emotional distress and special damages.

102. The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff and as a result, Defendant is liable to compensate her for damages as outlined herein.

## FOURTH COUNT
### (Agency/Respondeat Superior)

103. Defendant is liable to Plaintiff for the acts of its employees and agents.

104. The acts committed by its agents and employees were committed within the scope of their employment or agency relationship with Defendant. The wrong is of the kind that the agent or employee is engaged to perform, occurred within the time and space limits of the relationship, was actuated at least in part by a purpose to serve the principal or employer and Defendant actually received a benefit from wrongful acts of its employees or agents.

105. Defendant intended the acts or results of its employees and agents.

106. Defendant was reckless or failed to exercise reasonable care over its employees and agents.

107. The wrongful acts committed against plaintiff by defendant's employees or agents were especially egregious, and defendant's upper management through its employees, agents and others actually participated in the wrongful conduct or demonstrated willful indifference.

108. Defendant approved of the acts and the results obtained by its employees and agents.

109. Defendant ratified the acts and the results obtained by its employees and agents.

110. Defendant as principal is responsible in Respondeat Superior and Agency for any and all damages for which its employees and agents may be found liable.

WHEREFORE, Plaintiff demands judgment against the defendant as follows:

   a. For declaratory judgment that defendant violated the FDCPA (15 U.S.C. 1692 et seq.);

b.  For actual damages;

c.  For compensatory damages;

d.  For maximum statutory damages under the FDCPA (15 U.S.C. 1692 et seq.) and all other applicable statutes;

e.  For reasonable attorneys' fees pursuant to 15 U.S.C. 1692k(a)(3) and all other applicable statutes cited herein, together with costs of suit in connection with this action;

f.  For equitable relief;

g.  For punitive damages;

h.  For pre-judgment and post-judgment interest; and

i.  For such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues subject to trial.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Christopher J. McGinn, Esq., is hereby designated as trial counsel for the plaintiff, in the above matter.

## CERTIFICATION

Pursuant to R. 4:5-1, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I further certify that I know of no party who should be joined in the action at this time.

By: _____
GLEN H CHULSKY
Attorney for Plaintiff

Dated:  October 10, 2007